IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| Coastal Media Company d/b/a Coastal Medical | : | |
| 126 S. Park Avenue | : | Case No.: 1:21-CV-445 |
| Suite C | : | |
| Winter Park, FL | : | Judge: |
|     Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| Group Vertical, LLC | : | |
| 678 Front Ave NW | : | |
| Suite 199 | : | |
| Grand Rapids, MI 49504 | : | |
| | : | |
| Ryan Schut | : | |
| 6359 Buena Vista Ct NE | : | |
| Rockford, MI 49341 | : | |
|     Defendants. | : | |

    Plaintiff Coastal Medical Company by and through undersigned counsel, files its Verified Complaint, against Group Vertical, LLC and Ryan Schutt regarding the sale, return, payment, and delivery of medical equipment.

    Plaintiff alleges, on knowledge as to their own actions, and otherwise on information and belief, as follows:

1. Plaintiff Coastal Media Company ("CMC" is a corporation with a principal place of business in Winter Park, Florida.

2. Defendant Group Vertical, LLC ("Group") is a limited liability company with a principal place of business in Grand Rapids, Michigan.

3. Defendant Ryan Schut ("Schut") is the owner or employee of Group Vertical, LLC and is a resident of Rockford, Michigan.

4. The dispute in question revolves around a $976,000 wire transfer from CMC to Group.

## JURISDICTION

5. The Court has jurisdiction over this case on two grounds: the case involves a federal question and diversity jurisdiction.

6. The action is appropriately brought under 18 U.S.C. 1331, federal question jurisdiction, as Defendants have violated 18 U.S.C. 1343 and 18 U.S.C. 1962.

7. The Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. 1367.

8. Venue is appropriate as Defendants reside and maintain a principal place of business in Kent County, Michigan.

## GENERAL ALLEGATIONS

9. CMC maintains a line of business a wholesaler of personal protective equipment ("PPE").

10. On or before February 17, 2021, CMC was in contact with Shut regarding an order for PPE.

11. Schut represented himself as a supplier of PPE.

12. CMC had an inquiry regarding Nitrile Medical Gloves from a company in Missouri.

13. On February 17, 2021, CMC reached out to Schut about placing an order for Dongtai Nirtirle Medical gloves to fulfill the request.

14. CMC confirmed with Schut and Group that if there were any issues with the gloves CMC was ordering the gloves would be returnable. See Exhibit A.

15. Schut and Group confirmed if there was any issue CMC would be entitled to a full refund. Id.

16. In reliance on this representation, CMC placed the order for 61,000 boxes of Dongtai Nitrile Medical Exam gloves (herein "Gloves").

17. CMC wired Group the purchase price of $976,000. See Exhibit B.

18. Within two hours of wiring the money from CMC to Group the buyer had cancelled its order with CMC.

19. CMC cancelled its order with Group.

20. Per the representation made by Schut earlier that day, CMC understood it would receive a full refund.

21. Group refused to refund CMC the money it had wired hours before.

22. Group took possession of the Gloves.

23. Group, in an effort to mitigate CMC's losses, attempted to resell the Gloves.

24. CMC, in an effort to mitigate its damages, attempted to resell the Gloves.

25. Group, in an effort to mitigate CMC's losses provided CMC a $61,000 credit on another order CMC placed with Group.

26. On March 5, Group wired $400,000 for the sale of the Gloves to CMC.

27. On March 12, Group wired $122,920, but only $12,500 was related to the sale of the Gloves; the remaining $110,420 was related to incorrect syringes ordered in a separate order.

28. On April 9, 2021 Schut represented that additional gloves would be sold and CMC would be paid for the gloves.

29. CMC has not been paid for the gloves that sold on April 9.

30. Again on April 20, Schut represented that it would be wiring funds to CMC.

31. No funds were wired on April 20 to CMC.

32. On April 22 Group wired $117,500 for the sale of the Gloves to CMC.

33. In May 2021, CMC was still owed $385,000.

34. Group and CMC reached an agreement whereby Group would remit a total of $310,000 in weekly payments.

35. Group made one weekly payment on May 12, 2021 in the amount of $21,547.67.

36. Group breached the agreement for the discount balanced owed by failing to make any subsequent weekly payments.

37. Group never remitted a payment on May 12, 2021 or any date thereafter.

38. The current balance owed to CMC is $363,458.33.

## COUNT 1: UNJUST ENRICHMENT

39. All preceding paragraphs are incorporated herein by reference.

40. Defendants had the use of Plaintiff's $976,000 wire transfer for over four months.

41. Defendants represented that such funds would be refunded to CMC.

42. Defendants instead refused to refund the funds to CMC and purchased Nitrile gloves with the funds.

43. Defendants sold the Nitrile gloves for a profit and yet refused to remit the proceeds to CMC.

44. CMC has not received its full payment or the proceeds from the sale of the product it purchased.

45. Defendants have kept the revenue from the product it purchased with CMC's funds.

46. CMC has been damaged as a result of Defendants' use of CMC's money.

47. CMC has been damaged in an amount no less than $363,458.33.

48. All preceding paragraphs are incorporated herein by reference.

49. Schut represented that the order placed by CMC was cancellable for a full refund.

50. CMC relied on this representation when it ordered the Gloves from Defendants.

51. Schut and Group knew the order was not refundable when it made the representation to CMC.

52. CMC has been irreparably damaged a result of Schut's representation in an amount not less than $363,458.33.

## **COUNT 2: CONVERSION**

53. All preceding paragraphs are incorporated herein by reference.

54. CMC order Gloves from Schutt and Group.

55. Group did not cancel the Glove order despite representations to do so.

56. Group did not deliver the non-cancellable Glove order to CMC.

57. Group took ownership, custody, and control over the Gloves.

58. Group's actions were inconsistent with CMC's rights to own, have custody and control over the Gloves its money paid for.

59. CMC has been damaged as a result of Group's actions in the amount not less than $410,000.

60. CMC is entitled to treble damages as a result of Group's action pursuant to MCL 600.2919a.

61. CMC is entitled to its attorneys fees as a result of Group's action pursuant to MCL 600.2919a.

### COUNT 3: VIOLATION OF 18 USC. 1343: FRAUD BY WIRE

62. All preceding paragraphs are incorporated herein by reference.

63. Defendants represented to CMC that the Gloves order was cancellable.

64. Defendants representation was false as CMC's Gloves order was not cancellable.

65. CMC relied upon Defendants' representation that the Gloves order was cancellable when CMC transferred $976,000 by wire transfer to Group.

66. Defendants made false representations to CMC in order to obtain a wire transfer.
67. CMC was not able to cancel the order.

68. CMC has not received a refund.

69. CMC has not received all funds it is due from Defendants' attempts to liquidate damages.

70. Defendants devised a scheme and plan was ultimately to obtain a wire transfer from CMC.

71. CMC did complete a wire transfer of $976,00.

72. CMC has been damaged in an amount not less than $363,458.33.

73. Defendants' actions outlined above violate 18 U.S.C. 1343.

### COUNT 4: RACKETERRING

74. All preceding paragraphs are incorporated herein by reference.

75. Defendants engaged in a racketeering activity as defined by 18 U.S.C. 1961 relating to its wire fraud described above.

76. Defendant Gloves is an enterprise as defined by 18 U.S.C. 1961.

77. Defendant Schut was employed by an enterprise engaged in racketeering activity relating to the wire fraud above.

78. Plaintiff has been damaged by Defendant Gloves as an enterprise engaged in racketeering by virtue of the wire fraud outlined above and Defendant Schut's involvement in the same wire fraud.

79. Plaintiff is entitled to relief as outlined in 18.U.S.C. 1963.

### COUNT 5: BREACH OF CONTRACT

80. All preceding paragraphs are incorporated herein by reference.

81. On May 12, 2021 the Parties entered into a verbal agreement whereby Gloves would remit weekly payments equal to a discounted balance of $310,000 until the balance was paid in full.

82. Group made 1 payment under this verbal agreement.

83. Group breached the agreement by failing to remit any subsequent payments.

84. Group continues to be in breach of the agreement by failing to make any subsequent payments.

85. As a result of the breach, CMC has and will continue to be damaged in the amount of $363,458.33.

WHEREFORE, Plaintiff prays this Court:

    A. Award CMC actual damages in an amount no less than $363,458.33,

    B. Award CMC compensatory damages,

    C. Award CMC treble damages in accordance with MCL 600.2919a,

    D. Award CMC its attorney's fees in accordance with MCL 600.2919a,

    E. Statutory interest on the judgment,

    F. Costs of bringing this action, and

    G. Any other relief the Court deems just and equitable.

                                Respectfully submitted,

                                /s/Allison L. Harrison
                                **Allison L. Harrison (P75345)**
                                ALLISON L. HARRISON LAW, LLC

          100 E Broad St, Suite 320
          Columbus, Ohio 43215
          Ph: (614) 440-1395
          Attorney for Coastal Media Company

## VERIFICATION

State of Florida  }

County of  ORANGE  } ss:

I, Tyler Bloechinger, on behalf of Coastal Media Company swear and affirm that I have read the foregoing Complaint and the statements made therein are true to the best of my knowledge.

_____
Tyler Bloechinger
On behalf of Coastal Media Company

Sworn to and subscribed before me this __28th__ day of __May__, 2021.



Notary Public State of Florida
Nicole Kennedy
My Commission GG 201100
Expires 03/27/2022